1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NABIL SAMAAN,

11            Plaintiff,              No. CIV S-07-0960 RRB GGH

12      vs.

13   KURT SAUER,

14            Defendant.             ORDER

15   _____/

16   KURT SAUER,

17            Counter Claimant,

18      vs.

19   NABIL SAMAAN,

20            Counter Defendant.

21   _____/

22   <u>INTRODUCTION</u>

23            Previously pending on this court's calendar for January 10, 2008, was Defendant

24   and Counter-claimant Sauer's amended motion to quash subpoena and for a protective order,

25   \\\\\

26   \\\\\

1

1  filed November 28, 2007.  Elizabeth Lawley appeared on behalf of Kurt Sauer.  R. Lawrence

2  Bragg represented Nabil Samaan.[1]

3  BACKGROUND

4        Samaan, a person of African descent, filed this action on May 22, 2007, alleging

5  racial discrimination by Sauer, who was a juvenile probation officer, during the period from

6  March to April, 2007.  Sauer countersued, alleging libel and slander, by virtue of Samaan's

7  correspondence to Sauer's employer accusing Sauer of being a racist and being discriminatory

8  toward minorities, which Sauer claims is false.  Sauer's counter claim seeks damages for

9  "emotional distress and anxiety, embarrassment, and great and irreparable loss and injury to his

10  reputation."  Counterclaim, at ¶ 9.

11        It should be noted that Samaan is in a relationship with Sauer's ex-wife, Shannon

12  Wilde, and Sauer and Wilde are currently in litigation over the custody of their son.  Wilde wants

13  to relocate the son to Sacramento, where Samaan lives, and Sauer resides in Shasta County.

14  Sauer believes Samaan wants to abuse the discovery process for Wilde's benefit in the family

15  court proceedings.

16  DISCUSSION

17        Sauer brings this motion to prevent Samaan from taking the deposition of Ann

18  O'Sullivan-Brynjolfsson, LCSW, and production of records, based on the psychotherapist-patient

19  privilege.  Sauer had seen her for marital counseling on a few occasions in 2005.

20        Sauer has provided a declaration by O'Sullivan-Brynjolfsson which states that she

21  saw both Sauer and his wife but it was so brief that she did not provide any actual treatment.  She

22  also states that she treated Sauer by himself on a few occasions, but it was solely for the purpose

23  of marriage counseling and not for emotional distress.  She further stated that she never observed

24  any discriminatory behavior or qualities by Sauer.  She provided records of her three treatment

25

26      [1] Mr. Bragg is counsel for Mr. Samaan only in regard to the counter-claim.

2

1 sessions with Sauer to his ex-wife, Shannon Wilde, on October 25, 2007, under the mistaken

2 belief that Wilde was still Sauer's spouse.  O'Sullivan-Brynjolfsson Decl., ¶ 5.

3          A psychotherapist-patient privilege applies in federal question cases.  <u>See</u> <u>Jaffee v.</u>

4 <u>Redmond</u>, 518 U.S. 1, 15, 116 S. Ct. 1923 (1996).  Like other privileges, however, a plaintiff

5 may waive the psychotherapist-patient privilege if claims put privileged information at issue.

6 <u>See</u> <u>Sarko v. Penn-Del Directory Co.</u>, 170 F.R.D. 127, 130 (E.D.Pa.1997); <u>Vann v. Lone Star</u>

7 <u>Steakhouse & Saloon, Inc.</u>, 967 F. Supp. 346, 349-50 (C.D.Ill.1997); <u>c.f.</u> <u>Home Indem. Corp. v.</u>

8 <u>Lane Powell Moss and Miller</u>, 43 F.3d 1322, 1326 (9th Cir.1995) (applying waiver to

9 attorney/client privilege).  The Supreme Court in <u>Jaffee</u> recognized privileges could be waived,

10 but it has not discussed the factors which determine waiver of the psychotherapist privilege.  <u>See</u>

11 518 U.S. at 18, 116 S.Ct. at 1932.

12          Lower courts disagree on the test to determine whether the privilege is waived.

13 Some apply a broad test, finding mental condition at issue, and, accordingly, waiver of the

14 privilege, whenever emotional distress damages are sought.  <u>See</u> <u>Kirchner v. Mitsui & Co.</u>

15 <u>(U.S.A.), Inc.</u>, 184 F.R.D. 124 (M.D.Tenn.1998) (claim for emotional distress damages waives

16 privilege; <u>EEOC v. Danka Indus., Inc.</u>, 990 F. Supp. 1138, 1142 (E.D.Mo.1997) (same).  Others

17 decline to find waiver unless the emotional distress claims are more than mere "garden variety"

18 or incidental emotional distress damages claims.  <u>See</u>  e.g., <u>Ruhlmann v. Ulster Co. Dept. of</u>

19 <u>Social Serv.</u>, 194 F.R.D. 445 (N.D.N.Y. 2000) (no waiver by claim for incidental emotional

20 distress damages); <u>Krocka v. City of Chicago</u>, 193 F.R.D. 542 (N.D. Ill. 2000) (plaintiff who

21 limited emotional distress damages to embarrassment and humiliation did not waive privilege);

22 <u>Jackson v. Chubb Corp.</u>, 193 F.R.D. 216 (D.N.J. 2000) (garden-variety emotional distress claim

23 does not waive the privilege); <u>Speaker ex rel. Speaker v. County of San Bernardino</u>, 82

24 F.Supp.2d 1105 (C.D.Cal., 2000) (no waiver unless mental state or communication with therapist

25 at issue); <u>Fritsch v. City of Chula Vista</u>, 196 F.R.D. 562, 568 (C.D. Cal. 1999) (no waiver unless

26 therapist as witness or communication with therapist at issue); <u>Santelli v. Electro-Motive</u>, 188

1  F.R.D. 306 (N.D. Ill. 1999) ( self-imposed limits on emotional distress claim preserves

2  privilege); Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 225- 30 (D.Mass.1997) (no waiver

3  where plaintiff sought incidental emotional distress damages).

4          As a preliminary matter, the parties do not dispute that the psychotherapist

5  privilege applies to this marriage counselor.[2]  Samaan also does not claim that O'Sullivan-

6  Brynjolfsson's declaration stating that she treated Sauer but that it was solely for the purpose of

7  marriage counseling and not for emotional distress, acts as a waiver by its disclosure.

8          What Samaan does claim is that Sauer waived the privilege in two ways.  First, he

9  contends that Sauer placed his emotional state at issue by alleging a distinct cause of action for

10  emotional distress, and by disclosing other psychotherapists who will testify in support of his

11  claim.  He also asserts that Sauer testified at his deposition that he suffered severe and significant

12  stress prior to the allegedly defamatory statements made by Samaan.  Samaan contends that the

13  information sought may show other sources for Sauer's emotional distress, which may have

14  existed prior to Samaan's allegedly defamatory statements.

15          As set forth above, there are two views as to how broadly or narrowly waiver of

16  this privilege should be construed.  Although the Ninth Circuit has not addressed the matter, a

17  central district of California case decided a similar issue after having considered both views.  In

18  

19      [2] The court is somewhat puzzled that counsel opposing production of the marriage counselor's records does not dispute the applicability of the psychotherapist privilege when the

20  therapist declares that she did not treat Sauer for emotional distress purposes, but only for the distinct purpose of marriage counseling.  The undersigned does not believe that marriage

21  counseling, in and of itself, qualifies for the privilege any more than financial counseling would, and there is scant authority which would support a conclusion of inclusion.  See United States v.

22  Schwensow, 151 F.3d 650, 657 (n.4) (7th Cir. 1998).  The psychotherapist privilege, by focusing on its name, is most apt when speaking about mental health treatment as opposed to counseling

23  on issues of life.  Not all, or even many, persons struggling with keeping a marriage together should be considered mentally ill or emotionally disturbed.  While there is no doubt private

24  information conveyed to a marriage counselor, i.e., information the parties would otherwise not wish to be public, the improper dissemination of such information can be avoided by a protective

25  order.  Absent the privilege, the only question concerning counseling records involves whether relevant evidence might be found in the marriage counselor's files.  Nevertheless, the court will

26  accept the parties assumption to the contrary.

1    Speaker v. County of San Bernardino, 82 F. Supp.2d 1105 (C.D. Cal. 2000), the court took note

2    of the majority view which adopted a broad interpretation that all communications between the

3    party and the psychotherapist are waived when the party places his or her mental state at issue,

4    even if it is only a claim of damages for emotional distress.  The narrow, but growing view, was

5    that the party must directly place the privileged communication at issue; it is not enough to

6    simply allege damages for emotional distress in a complaint, but waiver requires that the party

7    "either calls his or her therapist as a witness, or introduces the substance of the privileged

8    communication into evidence."  Id. at 1118-19, citing Vanderbilt v. Town of Chilmark, 174

9    F.R.D. 225 (D. Mass. 1997).  The Speaker court declined to decide which view to follow, instead

10   finding a waiver under either view as to the subject of perception distortion only, but not any

11   other subject.  There, the party, a defendant, raised perception distortion as a possible defense by

12   testifying to it in his deposition, and by submitting an expert report on this subject.  Id. at 1120.

13   Nevertheless, because the party represented that he did not intend to introduce any other evidence

14   of his mental state on any other topic discussed with his psychotherapist, no other topics were

15   found to be waived.  Id.

16          Here, the counter-claim alleges emotional distress as special damages only.

17   Counterclaim at ¶ 9. (Docket #5.)  There is no separate claim for emotional distress.  Sauer did

18   designate four other treating therapists as witnesses, indicating they had all treated him for

19   emotional distress; however, he did not list O'Sullivan-Brynjolfsson as a witness.  (Docket #12 at

20   ¶¶ 6-8.)  Sauer did testify to severe stress prior to Samaan's statements; however, Sauer and

21   O'Sullivan-Brynjolfsson both indicate that he saw this therapist on a few occasions for marital

22   counseling only.  O'Sullivan-Brynjolfsson's declarations states that her time with Sauer and his

23   wife was so negligible that she did not provide actual treatment to them.  O'Sullivan-

24   Brynjolfsson Decl., ¶ 2.  This therapist also had three sessions with Sauer alone, but states that

25   this therapy was strictly for marriage counseling and included no treatment for emotional

26   distress.  Id. at ¶ 3.

1    It is true that under either test discussed above, plaintiff may have waived a

2 privilege as to his emotional state because he seeks damages for emotional distress in his

3 counterclaim, he testified to severe and significant stress in his deposition, and he has disclosed

4 as witnesses the names of four therapists who treated him for emotional distress.  As in Speaker,

5 however, this court finds that Sauer did not waive the privilege as to his sessions with

6 O'Sullivan-Brynjolfsson because they were limited to marriage counseling and any waiver

7 applies to emotional distress only.  The declaration of the above counselor is sufficient evidence

8 that the subject of emotional distress was not raised during this treatment.

9    Second, Samaan claims that Sauer expressly waived the privilege when he signed

10 a written authorization allowing the release of these records to Sauer's wife who in turn could re-

11 disclose the records.  Oppo., Ex. C.  A review of the "Authorization to Disclose Protected Health

12 Information," indicates that it was signed by Kurt Sauer and Shannon Wilde and disclosure was

13 limited to "myself or spouse or any necessary medical provider."  Disclosure was limited to the

14 purpose of  "insurance billing *or* as needed," and the specific use or limitation of the information

15 was for "insurance billing as needed."  Id. (emphasis added.)

16    This authorization was signed by both spouses on April 13, 2006, and

17 authorization was given until the "end of treatment or 2 years."  Id.  Plaintiff's amended motion

18 to quash states that he and his ex-wife sought marriage counseling from O'Sullivan-Brynjolfsson

19 in 2005.  He does not state when he saw this therapist on his own, but states that he disclosed the

20 estimated dates at his deposition.  Pl.'s Am. Mot. at 2:11; Reply at 4:11.

21    The court fails to find an express waiver from this document.  First, the

22 authorization was intended to be used for treatment of both spouses during marriage counseling,

23 as evidenced by the dual signatures.  It was not intended to apply to treatment of Sauer by

24 himself.  Second, the document, when read as a whole, indicates that it limits disclosure for

25 insurance billing only.  The use of the word "or" in one part of the authorization will not be

26 interpreted to expand use or disclosure of the records where this word was clearly eliminated in a

6

later section of the document where disclosure was limited to insurance billing only.  Third, Sauer's ex-wife obtained the records only by her failure to disclose to the therapist that she was no longer married to Sauer.  O'Sullivan-Brynjolfsson states in her declaration that she provided the "records with the mistaken belief that Ms. Wilde remained Mr. Sauer's spouse." O'Sullivan-Brynjolfsson Decl., ¶ 5.  She states that she was "completely unaware" of the ensuing litigation between Sauer and Wilde.  Id.; ¶ 6.  Because Wilde as the recipient of the records obtained them with unclean hands, an argument of waiver of privilege is untenable.  Finally, the fact that Wilde may have waived any privilege by obtaining the documents does not waive the privilege for Sauer as he is a separate holder of the privilege.

Assuming as the parties do that marital counseling records are included within a psychotherapist privilege, the court finds that under Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923 (1996), the privilege is absolute, i.e., not subject to a balancing test, and there has been no waiver.

CONCLUSION

Accordingly, IT IS ORDERED that:

1.  Defendant and counter-claimant Sauer's amended motion to quash subpoena and for a protective order, filed November 28, 2007, is granted.  Ms. O'Sullivan-Brynjolfsson shall not be produced for deposition or production of records.

2.  Sauer's motion for order barring deposition of Ms. O'Sullivan-Brynjolfsson, and for protective order, filed January 7, 2008, and set for hearing on February 21, 2008, is vacated as moot.

DATED: 01/24/08

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH/076
Samaan0960.qua.wpd