IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIL SAMAAN, | Case No. 2:07-CV-00960 JAM GGH |
|     Plaintiff, | <u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COMPLAINT</u> |
|   v. | |
| KURT SAUER and DOES 1-10, | |
|     Defendants. | |

Plaintiff Nabil Samaan ("Samaan") brought an action against defendant Kurt Sauer ("Sauer") alleging discrimination on the basis of race in violation of various federal and state laws. Sauer filed a counterclaim alleging defamation. Sauer now moves for summary judgment or, in the alternative, summary adjudication, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Samaan opposes the motion. For the reasons set forth below, Sauer's motion is GRANTED.[1]

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

I. FACTUAL AND PROCEDURAL BACKGROUND

Samaan is an attorney of Egyptian descent with a home and business in Sacramento. Sauer is a juvenile probation officer for Shasta County. He currently resides in Redding. Sauer was formerly married to Shannon Wilde ("Wilde"). Sauer and Wilde have a son named Aidan. Wilde and Aidan currently reside in Redding. In or around March 2006, Wilde became romantically involved with Samaan. She recently gave birth to a child fathered by Samaan. In late 2006, Wilde filed for a divorce from Sauer. The marriage was dissolved on March 28, 2007. Since June 2007, Sauer and Wilde have been involved in a custody dispute. Wilde seeks to modify the terms of her custody so that she and Aidan can move to Sacramento and live with Samaan.

On or about March 7, 2007, Samaan alleges that Sauer made or received phone calls wherein he used the word "nigger" in reference to Samaan. According to Samaan, Sauer allegedly stated that he did not want the "nigger" (Samaan) around his ex-wife, and that his ex-wife "got herself a nigger." From March 8 to April 3, 2007, Sauer allegedly called or e-mailed threats about Samaan. On April 19, 2007, Sauer allegedly made threats against Samaan to a fellow probation officer, including commenting that he would "like to kick that nigger's ass." On May 22, 2007, Samaan filed the instant action against Sauer alleging discrimination on the basis of race in violation of

various federal and state laws.  Specifically, the complaint alleges two federal claims, including violations of 18 U.S.C. §§ 241, 245 and 42 U.S.C. § 1981.  The complaint also alleges two state law claims, including violations of the Unruh Civil Rights Act, Cal. Civ.Code § 51, the Ralph Act, Cal. Civ.Code § 51.7, and the Bane Act, Cal. Civ.Code § 52.1.

On July 21, 2007, Samaan sent an e-mail to Brian Richart ("Richart"), Sauer's supervisor at the Shasta County Probation Department, and to Don Yost ("Yost"), the Vice President of Shasta County Citizens Against Racism ("SCCAR").  In these e-mails, Samaan identified himself as an attorney of Egyptian descent from Sacramento.  He claimed that he had "filed a Federal case against a Juvenile probation officer in Redding" predicated on racist comments made by this individual.  Samaan further claimed that he had hired a private investigator that allegedly followed this probation officer for several days documenting his use of the "N" word.[2]  The e-mail also stated that another probation officer was present at the time some of the racist comments were made.  The e-mails, however, did not specifically identify the probation officer by name.  At the

---

[2] Specifically, the e-mail states, "Not only do I have an e-mail that confirms [the probation officer's] racist comments, but I also have a declaration under oath by this person that states, he has no idea that calling someone a 'greasy foreigner' is bad.  In addition, I hired a p.i. to follow this person for several days that has documented his use of the 'N' word."

time the e-mails were sent, Samaan had only commenced one federal lawsuit against a Shasta County juvenile probation officer.

Following his receipt of the e-mail, Richart discussed the matter with the Assistant Chief Probation Officer, Sherri Leitem ("Leitem"). Yost, for his part, contacted Tom O'Mara, in public relations at SCCAR, and Francine Brady, President of SCCAR, to relay the information in the message. On July 23, 2007, Leitem initiated an e-mail exchange with Samaan in response to his complaint. In this exchange, Samaan claimed that he would be forwarding additional information to the Shasta County Probation Department, including, a copy of the federal complaint, a declaration by the juvenile probation officer filed in another matter wherein he used the word "greasy foreigner, and the names of the two juvenile probation officers referenced in his July 21, 2007 e-mail. Samaan claimed that this information would provide "a basis to initiate an inquiry into the matter." Although she was unable to recall whether she received any materials from Samaan, Leitem obtained a copy of the underlying complaint.

On August 2, 2007, Leitem assigned Tyler Wilson ("Wilson") to conduct an internal affairs investigation into Samaan's complaint. When the assignment was made, Leitem informed Wilson that the complaint was made against Sauer. On December 4, 2007,

4

the internal affairs investigation issued a report concluding that Sauer did not use the word "nigger" in reference to Samaan, nor did he make any similar statements or threaten him in any way.  The report stated that both Creighton Darling (the other probation officer referenced by Samaan in his e-mails) and Sauer denied ever being a part of a conversation where Sauer made threats or racially derogatory comments about Samaan.  The investigation further concluded that Sauer used the term "greasy foreigner" in reference to Samaan during a conversation with his ex-wife Wilde.  The investigation also concluded that there was no evidence that Sauer made comments or took action intended to coerce, intimidate or harass Samaan for the purpose of preventing him from moving to or visiting Redding.  Finally, the investigation concluded that while Samaan had requested in his federal complaint that Sauer's probation files be reviewed to ensure he had not harmed those under his control, there was no basis for doing so given that there was no evidence supporting Samaan's allegations.[3]

On August 7, 2007, Sauer filed a counterclaim against Samaan alleging that he made false and defamatory statements

---

[3] The evidence before the Court indicates that Samaan refused to cooperate with the internal affairs investigation insofar as he refused to be interviewed, submit a Citizen Complaint form, or turn over various documents related to his complaint against Sauer.

about Sauer to the "Anti-Racial League of the City of Redding"[4] and the County of Shasta.  Specifically, Sauer alleges that Samaan sent correspondence to his employer falsely accusing him of being a racist and discriminatory to minorities.  Sauer contends that this correspondence is libelous on its face insofar as it exposed him to hatred, contempt, ridicule and obloquy as well as cast doubt on his impartiality as a juvenile probation officer by attributing to him negative characteristics and traits which are generally looked down upon by society. Samaan's motion for summary judgment on Sauer's counterclaim was denied by this Court on September 11, 2008. Sauer filed his motion herein for summary judgment on August 6, 2008.  On August 15, 2008, Samaan filed his opposition.

## II. OPINION

A.  <u>Legal Standard</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material

---

[4] The Court notes that Samaan did not have any communications with the "Anti-Racial League of the City of Redding."  Rather, the evidence in the record reveals that he communicated with the Shasta County Probation Office and SCCAR.

fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof on an issue at trial, the movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325. "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006) (internal quotation marks omitted).

If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).  Summary judgment is appropriate if, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the moving party is entitled to

7

judgment as a matter of law.  Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

B.   First Claim: Violation of 18 U.S.C. §§ 241 and 245

Samman's first claim for relief alleges a violation of 18 U.S.C. §§ 241 and 245.  However, because these criminal provisions provide no basis for civil liability, the Court grants summary judgment in favor of Sauer on this claim.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (finding that criminal provisions such as 18 U.S.C. §§ 241 and 242 "provide no basis for civil liability"); Cooley v. Keisling, 45 F.Supp.2d 818, 820 (D.Or. 1999) (18 U.S.C. § 245 is a criminal statute and does not grant a private right of action to individuals and that enforcement of the statute rests in the discretion of the Attorney General of the United States).

C.   Fourth Claim: Violation of 42 U.S.C. § 1981

Samaan's fourth claim for relief alleges a violation of 42 U.S.C. § 1981.  Sauer maintains that summary judgment is appropriate with respect to this claim because Samaan cannot make a prima facie case under § 1981; specifically, Samaan cannot demonstrate that Sauer purposefully discriminated against him, nor can he demonstrate that he has suffered an impairment of his right to make and enforce contracts.

"In order to establish a claim under section 1981, a plaintiff must establish that (1) he or she is a member of a

racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." Peterson v. State of California Dept. of Corrections and Rehabilitation, 451 F.Supp.2d 1092, 1101 (E.D. Cal. 2006) (citing Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)). "Section 1981 is not 'a general proscription of racial discrimination . . . it expressly prohibits discrimination only in the making and enforcement of contracts.' " Peterson, 451 F.Supp.2d at 1101 (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989)) (emphasis omitted). Any claim brought under § 1981 must initially identify an impaired "contractual relationship," under which the plaintiff has rights. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006). Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship. Id.

In the present case, Samaan's complaint does not identify a contractual relationship. Rather, his complaint simply alleges that Sauer's comments and actions were intended to coerce,

9

intimidate and harass him for the purpose of preventing him from visiting the Redding area.  Samaan, for the first time, now argues that Sauer's discriminatory conduct impeded, restricted and harmed his right to enter into a lease arrangement for his new law office, hire employees and conduct business freely in Shasta County.  Even assuming that Sauer's complaint can be fairly read to state a cognizable claim under § 1981, the Court nonetheless finds that it does not survive summary judgment. Samaan did not present persuasive evidence or authority demonstrating that Sauer engaged in racial discrimination that blocked the creation of a contractual relationship. Specifically, Samaan failed to point to evidence in the record creating a genuine issue of fact on the question of whether Sauer's alleged conduct amounted to discriminatory interference preventing or impeding him from entering into a contractual relationship.  In fact, Samaan did not produce persuasive evidence contradicting the finding by the internal affairs investigator that there was no evidence supporting his contention that Sauer made comments or took action intended to coerce, intimidate or harass him for the purpose of preventing him from moving to or visiting Redding.  Indeed, Samaan concedes that he has never met or spoken with Sauer.  Accordingly, because Samaan failed to make a showing sufficient to create a genuine issue of material fact on the question of whether Sauer

engaged in discriminatory conduct blocking the creation of a contractual relationship, the Court grants summary judgment in favor of Sauer on this claim.

D.   <u>Supplemental Jurisdiction</u>

Because summary judgment is appropriate on all of Samaan's federal claims, only claims based on state law remain.  Thus, the question becomes whether this Court should exercise supplemental jurisdiction over Samaan's state law claims.  The Ninth Circuit uses a two-part analysis to determine whether it is appropriate for a court to exercise its discretion to decline supplemental jurisdiction.  <u>See</u> <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc).  First, a court must look to whether the case falls under one of the four enumerated circumstances under 28 U.S.C. 1367(c).  <u>Id.</u> at 1001.  Second, the court must consider whether the values of economy, convenience, fairness, and comity are served by retention of supplemental jurisdiction.  <u>Id.</u>  " '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.' "  <u>Id.</u> (quoting <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1998)).

In the present case, because the Court has dismissed all the federal claims that served as a basis for jurisdiction, this

Court has discretion under § 1367(c)(3) to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). As such, the question is whether the values of economy, convenience, fairness, and comity are served by retention of supplemental jurisdiction. As to economy, the Court finds that it has not invested so much judicial energy in this case to justify retention of jurisdiction. Substantial resources have not been committed to this case such that sending it to another court will cause a substantial duplication of effort. Moreover, because this Court did not invest any work or time in the state claims, dismissal of these claims will not result in duplication of any work by the undersigned. As to convenience, the Court is unaware of any reason why it would be more convenient to have this case proceed in this Court rather than in state court. As to fairness, the Court finds that a state forum will provide just as fair a proceeding as a federal one. Finally, as to comity, the Court finds that this factor weighs in favor of remand insofar as the remaining claims all arise under state law. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (needless decisions of state law should be avoided as a matter of comity).

In sum, this Court declines to exercise supplemental jurisdiction over Samaan's remaining state law claims. The Court has dismissed all the federal claims that served as a

basis for jurisdiction and the values of judicial economy, convenience, fairness, and comity, on balance, indicate that this case properly belongs in state court.  The Court therefore will dismiss Samaan's state law claims.  These claims are dismissed without prejudice; Samaan may proceed with these claims in state court.  See Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state claims following dismissal of related federal claims must be without prejudice), overruled on other grounds by Acri, 114 F.3d at 1000.

E.   Attorneys' Fees

Sauer requests an award of attorneys' fees pursuant to 42 U.S.C. § 1988 on the basis that Samaan's suit was vexatious, frivolous, and brought to harass or embarrass him.

Section 1988(b) provides, in relevant part: "In any action or proceeding to enforce . . . [42 U.S.C. § 1981] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  The authorization of an award of attorneys' fees under § 1988 applies differently to prevailing defendants than to prevailing plaintiffs.  Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994).  A prevailing defendant should not routinely be awarded attorneys' fees simply because he has succeeded.  Id.  A prevailing civil rights defendant may be awarded attorneys' fees

under § 1988 only if the plaintiff's claim was unreasonable, frivolous, meritless, or without foundation, or when the plaintiff continues to litigate after it clearly becomes so. Herb Hallman Chevrolet, Inc. v. Nash, 169 F.3d 636, 645 (9th Cir. 1999); see also Sherman v. Babbitt, 772 F.2d 1476, 1478 (9th Cir.1985) (a court has discretion to award attorneys' fees in a civil rights suit if the action is "groundless" or "without foundation"). An action is frivolous if it lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Peters v. Winco Foods, Inc., 320 F.Supp.2d 1035, 1037 (E.D. Cal. 2004).

In the present case, the Court finds that Sauer is entitled to an award of attorneys' fees. Samaan's federal claims against Sauer were frivolous insofar as they lacked an arguable basis in law or in fact. It is clear from the record that Samaan unreasonably pursued these claims for the purpose of embarrassing and harassing Sauer and not for the redress of his civil rights. This is evidenced by Samaan's failure to cite to persuasive evidence or any legal authority in support of these claims. It is further evidenced by the fact that Samaan's brief in opposition to Sauer's summary judgment motion herein references sensitive information that is materially irrelevant and includes disparaging personal accusations against Sauer. As a licensed attorney, Samaan certainly has no excuse for filing

such obviously frivolous federal claims and should have known better.  Accordingly, an award of attorneys' fees and costs is warranted in this case.

///

### III. ORDER

For the reasons set forth above, Sauer's motion for summary judgment is GRANTED with respect to Samaan's federal claims. Samaan's remaining state law claims are DISMISSED without prejudice.  Sauer is entitled to file a motion for attorneys' fees in accordance with Local Rule 54-293.

IT IS SO ORDERED.

Dated:  September 18, 2008         _____
                                   JOHN A. MENDEZ,
                                   UNITED STATES DISTRICT JUDGE